IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTEN A. MATEJKA, | ) | CASE NO. 1:13CV01933 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Kristen A. Matejka ("Plaintiff" or "Matejka") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental social security income ("SSI").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

The ALJ failed to explain why she did not incorporate in her Residual Functional Capacity ("RFC") determination a limitation based on the opinion by Matejka's counselor that she cannot persist at tasks.  The ALJ's failure to explain how she resolved the direct conflict between the RFC and a medical source opinion deprives this Court of the ability to conduct a meaningful review.  Accordingly, the Court should **REVERSE and REMAND** the Commissioner's decision for further proceedings.

## I.  Procedural History

Matejka filed her applications for DIB and SSI on November 3, 2011, and January 14, 2013, respectively.  Tr. 118, 141.  In her applications, Matejka alleged a disability onset date of June 27, 2011.  Id.  She alleged disability based on the following conditions:  four cervical surgeries, including three cervical fusions; degenerative disc disease; anterior and posterior cervical hardware (plate, rods, screws); osteoarthritis; thyroid disease; interstitial cystitis (bladder); anxiety disorder; cervical stenosis; numbness in hands, fingertips, shoulders, back, and left leg.  Tr. 165.  After denials by the state agency initially and on reconsideration (Tr. 44, 59, 76, 84, 88), Matejka requested a hearing (Tr. 42).  A hearing was held before Administrative Law Judge ("ALJ") Susan G. Giuffre on January 9, 2013.  Tr. 30.  Brett L. Salkin, an impartial vocational expert, also appeared at the hearing.  Tr. 65-72.  In her February 15, 2013, decision (Tr. 30-39) the ALJ denied Plaintiff's DIB claim.  The ALJ determined Matejka was capable of performing some of her past relevant work and, thus, was not disabled.  Tr. 39.  Subsequently, Matejka's SSI claim was escalated to hearing level and associated with her DIB claim.  Tr. 13.  Accordingly, the ALJ issued an amended decision on June 11, 2013.  Tr. 13-23.  In her amended decision, the ALJ determined again that Matejka was capable of performing some of her past relevant work and, thus, was not disabled.[1]  Tr. 22.

Matejka requested review of the ALJ's June 11, 2013, decision by the Appeals Council.  Tr. 24-25.  On August 5, 2013, the Appeals Council denied Matejka's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 6-8.

---

[1] The ALJ determined that Matejka was capable of performing her past relevant work as a medical assistant, a collections agent, and a waitress.  Tr. 22, 787-88.  The ALJ did not determine that Matejka could perform past relevant work as a residential care aide.  Id.

## II. Evidence

### A. Personal and Vocational Evidence

Matejka was 44 years old at the time of the administrative hearing. Tr. 765. Matejka testified that she completed one year of college and obtained her certificate in medical assisting. Tr. 766. Matejka last worked as a medical assistant for Lake Hospital System. Tr. 769.

### B. Relevant Medical Evidence

#### 1. Treating Source Notes

**Dr. Itani.** On December 10, 2007, Dr. Abdul L. Itani, M.D., performed a cervical surgery at C5-C7 on Matejka's spine. Tr. 534. On January 2, 2009, Dr. Itani again operated on Matejka, removing a retained plate at C5-C6 and performing a fusion of C4-C5 and C6-C7. Tr. 337. On June 2, 2010, Matejka returned to Dr. Itani complaining of heaviness on the right side of her body with numbness. Tr. 229. Dr. Itani stated that, "[t]here is nothing consistent about her story." Id. Dr. Itani advised that Matejka schedule an appointment with a neurologist "because there is nothing surgical in her neck that pertains to her complaints." Id.

**Lake Hospital System.** On April 23, 2008, Matejka reported to the emergency room of Lake Hospital System with complaints of neck pain and weakness. Tr. 303-06. On June 2, 2008, a CAT scan revealed alignment of Matejka's spine was normal. Tr. 300. It was also noted that "solid bony fusion has not occurred across the disc space." Id. A June 13, 2008, MRI revealed a stable post-operative surgical spine. Tr. 298.

An MRI performed on May 19, 2010, revealed "[p]ost-operative changes at C4-C7 with some bony prominence as well as some slight disc bulging at C6-C7 but no focal herniation or cord compression." Tr. 351. On October 15, 2010, it was noted that Matejka experienced a postoperative change of the cervical spine and mild scoliosis of the thoracolumbar spine. Tr.

387, 416.  A June 29, 2011, CAT scan showed that solid bony fusion across the disc spaces had not occurred but noted that alignment and spinal canal diameter were normal.  Tr. 377.

**University Hospitals – Neurological Institute.**  On January 27, 2011, Matejka presented to Dr. David J. Hart, M.D., Director of Spinal Neurosurgery at University Hospitals complaining of neck pain and neurological symptoms.  Tr. 549-50.  Dr. Hart recommend Matejka undergo a CT scan of her cervical spine to verify that her spine was solidly fused.  Tr. 550.  On March 17, 2011, Dr. Hart stated that a CT scan of the spine showed that she did not have a solid fusion at C4-C5 or C6-C7, although she was solidly fused between C5-C6.  Tr. 552.  Dr. Hart noted that the lack of fusion might explain her pain.  Tr. 574.

Dr. Hart recommend a C4-C7 posterior fusion.  Id.  Matejka indicated that she wanted to wait several months to get the procedure done.  Id.  Dr. Hart stated that she could wait to get the procedure done because she "has no neurological compromise."  Id.  On July 6, 2011, Dr. Hart performed the posterior fusion of C4-C7 on Matejka.  Tr. 420.  Postoperative radiology revealed stability.  Tr. 429.

Matejka returned to Dr. Hart for a post-surgical follow-up visit on August 22, 2011, where she reported a significant improvement in her pain but numbness in her upper extremities.  Tr. 554.  Dr. Hart stated that she was approved to return to work and that Matejka's employer agreed to allow her to return on a light-duty basis with no strenuous physical activity or lifting.  Id.  On October 27, 2011, Dr. Hart noted that Matejka took a turn for the worse after going back to work.  Tr. 555.   Matejka reported burning and stabbing pain in her back and tingling in the third, fourth, and fifth fingers of her left hand.  Id.  Matejka stated that she planned on resigning from her job.  Id.  Dr. Hart prescribed physical therapy and stated that he believed a lot of what Matejka was experiencing was related to muscle spasms.  Id.  On February 9, 2012, Matejka

returned for a follow-up with Dr. Hart noting an improvement in her pain symptoms although she was still dealing with burning across the backs of her shoulders, neck, and upper back area. Tr. 568.  Dr. Hart also noted that Matejka had good range of motion on flexion while her extension was severely limited.  Id.

**Pain Management Specialists – Dr. Pahr and Dr. Keum.**  On August 31, 2010, Matejka presented to Dean Pahr, D.O., complaining of chronic neck pain.  Tr. 471.  Dr. Pahr diagnosed cervicalagia, post cervical laminectomy syndrome, myalgia, history of lumbar radiculitis, and chronic pain syndrome.  Tr. 471-72.  Dr. Pahr stated that Matejka did not want to take narcotic pain medicines during her work hours.  Tr. 472.  He recommended Matejka try tramadol and voltaren gel.  Id.  In October 2010, Dr. Pahr stated that Matejka has a large component of anxiety with her chronic pain but noted that she had three neck surgeries.  Tr. 470. Dr. Pahr noted that Matejka's medication regimen of Ativan, Darvocet, and Ultram keeps her functioning.  Tr. 470.   On January 7, 2011, January 14, 2011, and January 21, 2011, Dr. Pahr administered bilateral nerve root injections to her spine.  Tr. 272-74.  By March 2011, Matejka reported to Dr. Pahr that she was doing well with the combination of medications and injections. Tr. 469.

In June 2011, Matejka reported numbness and locking up of her hands.  Tr. 477.  In October 2011, Matejka reported burning in her shoulders and stiffness and cramps in her hand. Tr. 476.  In December 2011, Matejka reported numbness in her hands and reported that she had balancing problems when her back pain was bad.  Tr. 475.   By March 2012, Matejka reported that she was doing well, but still had high "pain scores" most days.  Tr. 643.  Dr. Pahr recommended use of a Flector patch.  Matejka returned to Dr. Pahr in May 2012 indicating that her hands were locking up and cramping.  Tr. 718.

On September 9, 2012, and September 12, 2012, Matthew M. Keum, M.D., administered an epidural nerve block after an August MRI revealed minimal disc bulging.  Tr. 721, 726.

**Cherrica Davis – Primary Care Physician.**  On May 6, 2011, Matejka presented to Cherrica Davis, M.D., complaining of tightness in her paraspinal muscles and increased anxiety secondary to work, impending surgery, and finances.  Tr. 506.  Dr. Davis prescribed Matejka Lorezapam for her anxiety.  Id.  On February 21, 2012, Matejka returned to Dr. Davis complaining of increased anxiety and depression.  Tr. 686.  Dr. Davis recommended Matejka continue the Lorazepam and add Zoloft.  Id.  In May 2012, Matejka again complained of increased anxiety.  Tr. 696. In August 2012, Matejka stated that the Lorazepam is no longer helping and she was only sleeping 2-3 hours a night.  Tr. 723.  Dr. Davis recommended Matejka decrease the Lorazepam and add Zolpidem Tartrate (Ambien).  Id.

2.     **Opinion Evidence**

**Consultative Examiner – Herschel Pickholtz.**  On May 11, 2009, Dr. Herschel Pickholtz, Ed.D., conducted a psychological consultative examination of Matejka.  Tr. 221-27. Dr. Pickholtz noted that Matejka was not receiving any psychological or psychiatric treatment and had not received any in the past.  Tr. 222.  Matejka's pace and persistence during the evaluation were judged to be in the average range.   Tr. 223.  Dr. Pickholtz noted that Matejka was treated with psychiatric medications for significant anxiety complaints. Id.  Dr. Pickholtz further noted that the increase in frequency of Matejka's anxiety symptoms does not occur often and the severity of the symptoms was described as non-existent.  Id.  Dr. Pickholtz opined that Matejka's anxiety is fairly well-controlled with medication and that the severity and degree of impairment of her anxiety is "negligible."  Tr. 224-25.   Dr. Pickholtz opined that Matejka has no impairment in her ability to understand and follow instructions; maintain attention and

6

perform simple repetitive tasks; and relate to others.  Tr. 226.  Dr. Pickholtz opined that Matejka's ability to withstand stress and pressures from day-to-day work was mildly impaired. Id.

Dr. Pickholtz again performed a psychological examination of Matejka on February 2, 2012.  Tr. 593-601.  Matejka reported treatment through medication from Dr. Davis for anxiety and depression.  Tr. 597.  Dr. Pickholtz opined that Matejka's ability to understand, remember, and carry out simple instructions; maintain concentration, persistence, and pace; perform simple tasks; and respond to supervision and coworkers in a work setting, were not impaired.  Tr. 600. Dr. Pickholtz opined that Matejka's ability to respond to work pressures was slightly impaired. Id.

**Kate Belew, M.A., LPCC.**  On March 22, 2012, licensed counselor Kate Belew completed a Mental Status Questionnaire on Matejka's behalf.  Tr. 656-58.  Ms. Belew stated that she treated Matejka from March 15, 2012, through March 22, 2012.  Tr. 656.  She opined that Matejka was able to understand and follow directions but was "unable to persist at tasks due to neck [and] shoulder pain."  Tr. 657.

**State agency review.**  On February 24, 2012, Melanie Bergsten, Ph.D., a state agency psychologist, reviewed the medical evidence record and opined that Matejka had no restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  Tr. 51-52. Dr. Bergsten reported that Matejka's mental health symptoms were well controlled with medication and that her mental health symptoms were not severe.  Tr. 53.  Dr. Bergsten gave no weight to Ms. Belew's opinion noting it was based on subjective complaints and that the opinion considered pain and the counselor was unqualified to provide the opinion.  Tr. 54.

On April 2, 2012, state agency physician Elizabeth Das, M.D., completed a Physical Residual Functional Capacity Assessment and concluded that Matejka could occasionally carry 20 pounds; frequently carry 10 pounds; stand or walk for 6 hours in an 8 hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and could occasionally stoop, crouch, or crawl.  Tr. 54-55.  Dr. Das reviewed the opinion of Ms. Belew and stated that the opinion "relies heavily on the subjective report of symptoms and limitations provides by the individual, and the totality of the evidence does not support the opinion."  Tr. 56.  Dr. Das also noted that Matejka's brief treatment relationship with Ms. Belew was too short to allow a longitudinal picture of Matejka's impairments.  Id.

On July 28, 2012, state agency psychiatrist Todd Finnerty, Psy.D., reviewed the record and opined that Matejka had no restrictions of daily activities; mild difficulties maintaining social functioning and concentration, persistence or pace; and no repeated episodes of decompensation.  Tr. 69.  He also opined that Matejka's symptoms were well controlled with medication and her mental health symptoms were not severe.  Id.

On August 6, 2012, state agency physician Leslie Green, M.D., reviewed the record and affirmed Dr. Das's opinions.  Tr. 70-72.  Dr. Green also reviewed the March 22, 2012, opinion of Ms. Belew and stated that "the totality of the evidence does not support the opinion."  Tr. 73.  Dr. Green stated that Ms. Belew had only a brief treatment relationship with Matejka and Ms. Belew's opinion relies heavily on Matejka's subjective complaints.  Id.

### 3.    Third Party Questionnaires

Matejka presented four third party questionnaires for review.  On August 7, 2012, Mr. Robert Bland, Matejka's husband at the time, signed a questionnaire noting that he sees Matejka in constant, severe pain on a daily basis.  Tr. 200-01.  On August 8, 2012, one of Matejka's

daughters, Cierra Matejka, signed a third party questionnaire indicating that her mother was unable to do anything for more than five minutes without pain.  Tr. 206-07.  She further stated that she helps her mother with showering, dressing, eating, and some driving.  Id.  On August 9, 2012, a third party questionnaire was signed by another of Matejka's daughters, Brenna Matejka.  Tr. 204-05.  Brenna stated that her mother's hands and arms don't work right and that Matejka can't turn her neck.  Id.  She further stated that she helps her mother clean the house, do laundry, wash the dishes and assists with other things she needs.  Id.  Finally, there is also a third party questionnaire signed on August 9, 2012, by Zivana Vidosevic, a former co-worker, who observed Matejka in severe pain at work and stated that Matejka was severely limited in her activities.  Tr. 202-03.

### C.  Testimonial Evidence

#### 1.     Matejka's Testimony

At the administrative hearing, Matejka was represented by counsel and testified that she is unable to work due to rods, screws, and plates in her cervical spine.  Tr. 773.  She stated that she had limited mobility, limited range of motion, and loses the ability to grasp things with her hands.  Id.  Matejka testified that she cannot sit or stand for long.  Tr. 774.  Matejka stated that she has a left drop foot and uses a cane a few times a month when she feels off balance.  Tr. 777.

#### 2.     Vocational Expert's Testimony

Vocational Expert Brett L. Salkin ("VE") testified at the hearing.  Tr. 784-790.  The VE testified to the exertional and skill level of Matejka's past work as follows:  her job as a medical assistant job was light and skilled; her job as a home health aide was medium and skilled; her job as a collections agent was sedentary and skilled; and her job as a waitress was light and semi-skilled.  Tr. 786-87.  The ALJ then asked the VE to assume a hypothetical individual of

Matejka's age, education, and past work experience, with a capacity for light work who could climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds; who could balance, stoop, crouch, and crawl occasionally; and who is able to perform overhead work with either upper extremity on an occasional basis.  Tr. 787.  The VE testified that such a hypothetical individual could perform Matejka's past work except for her work as a residential care aide.  Tr. 788.

Then the ALJ asked if Matejka's past work could be performed by the same individual referenced in the first hypothetical with an additional limitation that the individual could only occasionally use her hands for handling, feeling, and fingering.  Tr. 787-88.  The VE testified that the hypothetical individual could not perform Matejka's past work but could perform work as a hostess (360 regional jobs; 1,200 Ohio jobs; 70,000 national jobs) and usher (250 regional jobs; 1,500 Ohio jobs; 74,000 national jobs).  Tr. 788-89.  Matejka's attorney then asked the VE if the usher or hostess job would be available for an individual who has to take a five minute break every twenty minutes.  Tr. 789.  The VE responded, "no."  Id.  Matejka's attorney then asked if those jobs would be available to a person who is absent two or more times per week.  Id.  The VE again responded, "no."  Id.  Finally, Matejka's attorney asked if those jobs would be available to a person who is off task 15 percent of the time.  Tr. 789-90.  The VE testified they would not.  Id.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy . . . .

42 U.S.C. § 423(d)(2).

 In making a determination as to disability under this definition, an ALJ is required to

follow a five-step sequential analysis set out in agency regulations.  The five steps can be

summarized as follows:

> 1.  If the claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must
>     be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity, is suffering from a
>     severe impairment that has lasted or is expected to last for a continuous
>     period of at least twelve months, and his impairment meets or equals a
>     listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If the impairment does not meet or equal a listed impairment, the ALJ
>     must assess the claimant's residual functional capacity and use it to
>     determine if claimant's impairment prevents him from doing past relevant
>     work.  If claimant's impairment does not prevent him from doing his past
>     relevant work, he is not disabled.
>
> 5.  If claimant is unable to perform past relevant work, he is not disabled if,
>     based on his vocational factors and residual functional capacity, he is
>     capable of performing other work that exists in significant numbers in the
>     national economy.

20 C.F.R. §§ 404.1520, 416.920;[2] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d

119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof

---

[2] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations
to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20

at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).
The burden shifts to the Commissioner at Step Five to establish whether the claimant has the
vocational factors to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In her June 11, 2013, decision, the ALJ made the following findings:

1. Matejka meets the insured status requirements of the Social Security Act
   through December 31, 2015.  Tr. 15.

2. Matejka has not engaged in substantial gainful activity since June 27,
   2011, the alleged onset date.  Tr. 15.

3. Matejka has the following severe impairments:  degenerative disc disease
   of the cervical and lumbar spine and status post multiple cervical fusions.
   Tr. 17.

4. Matejka does not have an impairment or combination of impairments that
   meets or medically equals the severity of the one of the listed
   impairments in 20 CFR Part 404, Subpart P, Appendix 1.[3]  Tr. 17.

5. Matejka has the residual functional capacity ("RFC") to perform light
   work, meaning she can lift and carry 10 pounds frequently and 20 pounds
   occasionally.  She can sit, stand, and walk for six hours in an eight hour
   workday as defined in 20 CFR 404.1567(b) and 416.967(b) except that
   she can occasionally climb ramps and stairs, balance, stoop, crouch (i.e.
   bend at the knees), crawl, and lift overhead with either upper extremity.
   She can never climb ladders, ropes, and scaffolds.  Tr. 17.

6. Matejka is capable of performing past relevant work as a Medical
   Assistant (DOT #079-362-010) classified at the light exertion level and
   skilled (SVP 6); Collections (DOT #241.357-010) classified at the
   sedentary exertion level and skilled (SVP 5); and Waitress (DOT
   #311.477-030) classified at the light exertion level and semi-skilled (SVP
   3).  Brett Salkin, the VE, testified that this work does not require the

C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to
the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[3] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P,
App. 1, and describes impairments for each of the major body systems that the Social Security Administration
considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age,
education, or work experience.  20 C.F.R. § 404.1525.

performance of work related activities precluded by the claimant's RFC.
Tr. 22.

7.      Matejka has not been under a disability, as defined in the Social Security
Act, from June 27, 2011, through the date of this decision.  Tr. 22.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals

Council denied review on August 5, 2013.  Tr. 6-9.

## V. Parties' Arguments

### A.      Plaintiff's Arguments

Plaintiff argues that the ALJ erred by not considering whether she meet Listing 1.02B

(Major dysfunction of a joint).   Doc. 17, pp. 10-12.  Plaintiff also argues that the ALJ did not

properly address the medical opinion of Ms. Belew.  Id. at 12-13.

### B.      Defendant's Arguments

In response, the Commissioner argues that the ALJ correctly found that Plaintiff did not

meet a listing and appropriately addressed the medical evidence.  Doc. 18, p. 8-13.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination

that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321

*F.3d 611, 614 (6th Cir. 20*03).  "Substantial evidence is more than a scintilla of evidence but less

than a preponderance and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028,

1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d

679, 681 (6th Cir.1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### A.  The ALJ's Step Three analysis is supported by substantial evidence

Relying on *Reynolds v. Comm'r of Soc. Sec.,* 424 Fed. Appx. 411 (6th Cir.2011), Matejka claims that the ALJ erred at Step Three because the ALJ did not specifically address her impairments under Listing 1.02(B).  Doc. 17, pp. 10-12.  Listing 1.02(B) provides:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> B.  Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.[4]

20 C.F.R. pt. 404, Subpt. P, App. 1.  The Commissioner responds that Plaintiff has never before argued that she met or equaled the requirements of Listing 1.02B and contends that Plaintiff presented no evidence to establish meeting the listing.  Doc. 18, p. 9.  In Plaintiff's brief she argues that she met Listing 1.02B because "[t]he record is replete with evidence of her inability to perform fine and gross movements effectively following four cervical fusions."  Id. at 11.

---

[4] Regulation 1.00B2c provides:

> What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1

At the third step in the disability evaluation process, a claimant will be found disabled if her impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.,* 381 Fed. Appx. 488, 491 (6th Cir.2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

"[I]t is the claimant's burden to show that he meets or medically equals an impairment in the Listings." *Todd v. Astrue,* 2012 WL 2576435, * 9 (N.D.Ohio 2012) (internal citations omitted). Relying on *Reynolds*, Plaintiff asserts that the ALJ erred at Step Three because the ALJ did not specifically address her impairments under Listing 1.02(B).  *Id.*, 424 Fed. Appx. 411; Doc. 19, pp. 10–11.  Matejka also cites various opinions of this Court for the same proposition. Doc. 19, p. 1.  *Shea v. Astrue*, 1:11CV1076, 2012 WL 967088 (N.D. Ohio Feb. 13, 2012) *report and recommendation adopted sub nom. Shea v. Comm'r of Soc. Sec.*, 1:11CV1076, 2012 WL 967072 (N.D. Ohio Mar. 21, 2012); *Keyes v. Astrue*, 1:11-CV-00312, 2012 WL 832576 (N.D. Ohio Mar. 12, 2012).  In *Reynolds, Shea, and Keyes,* the ALJ made conclusory statements that the mental and physical impairments of the respective claimants did not meet or equal a Listing and proceeded to discuss, in detail, only the claimant's mental impairments, not the claimant's physical impairments. *Reynolds,* 424 Fed. Appx. at 415-16; *Keyes,* 2012 WL 832576 *6; *Shea,* 2012 WL 967088 *9.  In all three cases it was determined that the Step Three evaluation of the claimants' physical impairments was insufficient because an evaluation of the evidence was

15

necessary to facilitate meaningful judicial review. *Id.*  Here, the ALJ did review Matejka's physical impairments in detail; however, the ALJ thoroughly reviewed Matejka's impairments under Section 1.04,[5] not Section 1.02.[6]  Accordingly, *Reynolds*, *Keyes*, and *Shea* are not analogous.

The above cited cases and the social security regulations do not require the ALJ to address every listing.  In the normal course, the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ. *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013).  If, however, the record "raise[s] a substantial question as to whether [the claimant] could qualify as disabled" under a listing, the ALJ should discuss that listing. *Id.  Abbott v. Sullivan,* 905 F.2d 918, 925 (6th Cir.1990).

In *Sheeks*, the Sixth Circuit reviewed the question of when a claimant raises a "substantial question" as to whether claimant met a listing in order to justify remand. *Sheeks*,

---

[5] The ALJ stated,

There is no evidence the severity of the claimant's musculoskeletal impairments meets or medically equals any of the criteria described in Section 1.04 as discussed below in the residual functional capacity.  The medical evidence does not reveal significant disorganization of motor function into extremities and no muscle weakness or atrophy.  The claimant was not prescribed and does not use ambulatory aids.  The claimant does not use a walker, two crutches, or two canes.

At hearing counsel asserts that the claimant's musculoskeletal condition meets Section 1.04a.  However, there is no support for the assertion as shown by the medical records or in the claimant's testimony.  The medical records show the pain management physician said she should use cane if it is needed.  She testified that she needs it "only when her leg is bothering" her and she feels off balance.  This occurs twice monthly.  She alleges having numbness and left foot drop.  She testified her hands cramp and lockup, and she drops things, although she can hold a pen to write, has no problems using eating utensils, and buttoning.  She said she has difficulty typing because her hands go numb and she cannot feel the keyboard.  She would hit the wrong keys.

The claimant attended two pain management visits on May 9, 2012 and July 25, 2012.  She reported difficulty using her hands in May, but in July she did not report difficulty using her hands.  She was noted as doing well on medications (Ex. 27F, pp. 2, 3, 6).

Tr. 17.

[6] At the hearing, Matejka's counsel argued only that Matejka met Listing 1.04a.

544 F. App'x at 641.   In that case, the Sixth Circuit noted that claimant made only a tenuous

case for meeting Listing 12.05(C):

> Take his evidence in support of the listing's third requirement: onset before age twenty-two. As to "significantly subaverage general intellectual functioning," Sheeks points only to his special education classes and his failure to finish high school. Sheeks testified that he attended special education classes "in elementary school" because he "couldn't see [and] couldn't pay attention" as a child. AR at 45. Yet Sheeks did not attend special education classes in high school. And while he did leave high school in the eleventh grade, he eventually earned a GED. As to "deficits in adaptive functioning," Sheeks does not flag any record evidence suggesting he had trouble caring for himself or handling social situations before age twenty-two. *See West v. Comm'r of Soc. Sec.,* 240 Fed.Appx. 692, 698 (6th Cir.2007) (suggesting that adaptive functioning refers to the "claimant's effectiveness in areas such as social skills, communication, and daily living skills"). A substantial question about whether a claimant meets a listing requires more than what Sheeks has put forth here, a mere toehold in the record on an essential element of the listing. The ALJ thus did not commit reversible error in failing to discuss the listing.

*Id.* at 642.   Similarly, here, Matejka makes only a tenuous case for meeting listing 1.02.  Matejka

points to various pieces of evidence in support of her argument that she has an inability to

perform fine and gross movements effectively including:  complaints of numbness and weakness

in her extremities and cramping and locking up of her right hand.  Doc. 17, p. 11; Doc. 19, pp. 4-

5.   However, like the plaintiff in *Sheeks*, Matejka does not flag any record evidence suggesting

that she meets the other required criteria of the listing such as "findings on appropriate medically

acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected

joint(s)."[7]  Thus, similar to *Sheeks*, Matejka fails to raise a substantial question about whether she

meets Listing 1.02.  Accordingly, the ALJ did not commit error by failing to discuss Listing

1.02.

---

[7] To the contrary, one of the pieces of evidence Matejka pointed to is an October 27, 2011, letter from Dr. Hart stating that, "films [Matejka] brought with her from an outside facility that were 2 days ago look excellent.  There is no evidence of any hardware failure or malalignment (sic)."  Tr. 555.

**B.  ALJ's failure to explain how she resolved the conflict between Ms. Belew's opinion and the RFC requires remand**

Matejka also contends that the ALJ erred because she made no mention of the opinion of Kate Belew, M.A., LPCC,[8] and failed to explain why the RFC did not incorporate a limitation based on Ms. Belew's opinion that Plaintiff "could not persist at tasks because of pain in neck and shoulders."  Doc. 17, p. 13.

"An ALJ is bound to adhere to certain governing standards when assessing the medical evidence in support of a disability claim." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 545 (6th Cir.2004)). "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Id.* (citing 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513).  The Regulations provide that the Commissioner "will always consider the medical opinions in . . . [a claimant's] case record together with the rest of the relevant evidence . . . receive[d]." 20 C.F.R. § 416.927(b).  Further, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating

---

[8] Ms. Belew is a licensed professional clinical counselor ("LPCC").  An LPCC is not an acceptable medical source under the regulations.  See 20 C.F.R. § 404.1513 & 416.913 (licensed professional counselors are not listed as acceptable medical sources); *Stigall v. Astrue*, CIV.A. 6:10-27-DCR, 2011 WL 65886 (E.D. Ky. Jan. 10, 2011) ("Numerous courts have affirmed the rule that counselors are not 'acceptable medical sources.' ").  Accordingly, her opinion is not entitled to any particular weight. *Hickox v. Comm'r of Soc. Sec.*, 1:09-CV-343, 2010 WL 3385528 (W.D. Mich. Aug. 2, 2010) *report and recommendation adopted,* 1:09-CV-343, 2010 WL 3385525 (W.D. Mich. Aug. 25, 2010) and *report and recommendation adopted,* 1:09-CV-343, 2011 WL 6000829 (W.D. Mich. Nov. 30, 2011).

sources, nontreating sources, and other nonexamining sources who do not work for us."[9]  20 C.F.R. § 426.927(e)(2)(ii).

An ALJ can consider all the medical opinion evidence without directly addressing in her written decision every piece of evidence submitted by a party.  *See Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir.2006).  However, if a medical source's opinion contradicts the ALJ's RFC finding, an ALJ must explain why she did not include the medical source's limitation in her determination of a claimant's RFC.  Social Security Ruling 96–8p provides, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  1996 WL 374184 at *7.  Courts in this District have held that an ALJ's failure to comply with this regulation requires reversal.  *See Fleischer v. Astrue,* 774 F.Supp. 2d 875, 881 (N.D.Ohio 2011) (ALJ's failure to address a medical source's opinion which conflicted with RFC constituted reversible error); *Thompson v. Comm'r of Soc. Sec. Admin.*, 1:12-CV-2372, 2014 WL 356974 at *4 (N.D. Ohio Jan. 31, 2014) (case remanded because ALJ failed to explain why she did not adopt in the RFC a conflicting limitation assigned by medical sources); *Moretti v. Colvin*, 4:13-CV-01344, 2014 WL 37750 at *10 (N.D. Ohio Jan. 6, 2014) (case remanded because the ALJ failed to explain why she did not include in the RFC a limitation assigned by a medical source); *See also Harvey v. Colvin*, 5:12-CV-2026, 2013 WL 1500688 at *8 (N.D. Ohio Apr. 10, 2013).

Matejka argues that the ALJ violated SSR 96-8p by failing to explain why she excluded Ms. Belew's opinion that she could not persist at tasks due to pain in her neck and shoulders. Doc. 17, p. 13.  The Commissioner responds that any error on the part of the ALJ is, at most, harmless because the record establishes sufficient reasons for the rejection of the counselor's

---

[9] Matejka does not rely on a treating source opinion.

opinion.  Doc. 18, p. 13.  In support, the Commissioner notes that the ALJ gave weight to the opinions of Dr. Pickholtz, Dr. Bergsten, and Dr. Das.  Doc. 18, pp. 10-12.  The Commissioner points out that Dr. Pickholtz opined that Matejka had only mild restrictions in concentration, persistence, and pace, and Drs. Bergsten and Das specifically discounted the opinion of Ms. Belew.  Id.

In some cases, the Commissioner may be able to show that an ALJ implicitly resolved conflicts in the evidence based on the ALJ's factual findings as a whole.  In order to make such a showing, however, the Commissioner must point to portions of the ALJ's decision itself rather than to other evidence in the record.  *Karger v. Commissioner of Social Sec.,* 414 Fed. Appx. 739, 749, 753 (6th Cir.2011).   In her decision, the ALJ acknowledged Ms. Belew's opinion that "claimant was unable to persist at tasks because of pain in neck in [sic] shoulders."  Tr 19.  However, the ALJ did not discuss why she disregarded a limitation based on an inability to persist at tasks.  In fact, although the ALJ summarily stated that Matejka was only "mildly restricted" in concentration, persistence, and pace (Tr. 16), the ALJ did not cite any evidence or otherwise explain at any point in her decision the basis for this finding.  Other than the above two references, the ALJ's decision lacks any discussion of  Matejka's abilities in the areas of concentration, persistence, or pace.  Accordingly, it is not clear how the ALJ resolved the inconsistency between Ms. Belew's opinion that Matejka could not persist at tasks and the ALJ's determination that Matejka was only mildly impaired in concentration, persistence, or pace.

The Commissioner argues that the ALJ "implicitly considered the opinion of counselor Belew" because the ALJ considered the medical evidence of Matejka's psychological impairments and the ALJ gave some weight to the opinions of Dr. Pickholtz, Dr. Bergsten, and Dr. Das.  Doc. 18, pp. 10-12.  The Commissioner's argument is without merit.  First, as

discussed above, the ALJ did not discuss medical evidence relating to the issue of concentration, persistence, or pace. Second, although the ALJ gave weight to the opinions of Drs. Pickholtz, Bergsten, and Das, the ALJ did not indicate that she gave weight to the portions of their opinions relating to concentration, persistence, or pace or the portions discrediting the opinion of Ms. Belew.

With regard to Dr. Pickholtz, the ALJ stated she gave "significant weight" to this opinion because

> His opinion is consistent with the mental health evidence in the file. The claimant receives supportive and conservative care. She was not psychiatrically hospitalized. She was prescribed medication that helps and by her primary care physician.

Tr. 21. The ALJ did not state or imply that she gave weight to the portion of Dr. Pickholtz's opinion in which Dr. Pickholtz opined that Matejka was only mildly limited in concentration, persistence, or pace.

In her decision, the ALJ also gave "significant weight" to the opinion of Dr. Das, stating that the medical consultants, including Dr. Das, "determined that claimant could do light work activity. She could never climb ladders, ropes, and scaffolds. She could occasionally climb stairs, stoop, crouch, and crawl. She was limited in overhead reaching with both arms (Exs. 2A, 41A). On January 15, 2013, the claimant still complained of some neck pain. She continues to receive conservative treatment (Ex. 35F)." Tr. 22. A review of the record reveals that Dr. Das considered and discounted Ms. Belew's opinion because Dr. Das found that Ms. Belew's opinion relied heavily on subjective reporting of symptoms; it was not supported by the totality of the evidence, and the treatment relationship between Ms. Belew and Matejka was too short. Tr. 56. The ALJ did not state or imply that she gave weight to the portion of Dr. Das's opinion that discounted Ms. Belew's opinion.

Finally, the ALJ gave "some weight" to Dr. Bergsten's opinion, stating, "The updated evidence did not change the assessments.  As indicated earlier in this decision, the claimant does not have a  severe mental health impairment."  Tr. 21.  A review of the record also shows that Dr. Bergsten reviewed and discounted Ms. Belew's opinion because it was based on subjective complaints and because Ms. Belew considered pain, something that Dr. Bergsten believed she was unqualified to provide an opinion on.  Tr. 54.   The ALJ did not state or imply that she gave weight to the portion of Dr. Bergsten's opinion that discounted Ms. Belew's opinion.

Even when an ALJ accords "significant weight" to a medical opinion, the ALJ is not required to adopt every opinion expressed by the medical expert.  *Schulte v. Colvin*, 4:13-CV-01521, 2014 WL 1654129 at *5 (N.D. Ohio Apr. 24, 2014) ("an ALJ is not required to adopt every opinion expressed by a non-examining medical expert, even when an ALJ overall accords that opinion great weight").[10] Thus, in looking at the ALJ's decision, it cannot be determined whether the ALJ adopted every portion of the opinions of Dr. Pickholtz, Dr. Das, and Dr. Bergsten.  In fact, in the case of Dr. Bergsten, it is clear the ALJ did not adopt this opinion wholesale as the ALJ only accorded it "some weight."

As stated earlier, in order to find that an ALJ implicitly resolved conflicts in the evidence based on her factual findings as a whole, the Court must look to the ALJ's decision itself rather than to other evidence in the record.  *Karger,* 414 Fed. Appx. at 749, 753.  Looking only at the

---

[10] *Schulte* cited to the following cases in support of the proposition that, even when an opinion is accorded great weight, it is not adopted wholesale: *Taylor v. Colvin,* 2013 WL 6162527 at * 14–15 (N.D.Ohio Nov.22, 2013) (finding ALJ was not required to adopt every opinion of ME "by virtue of the fact that, overall, he gave [the ME's] opinion great weight"). *See also White v. Comm'r of Soc. Sec.,* 2013 WL 4817673 at * 16 (N.D.Ohio 2013) (noting that "[t]he fact that the ALJ did not incorporate all of Dr. Castor's restrictions, despite attributing significant weight to his opinion, is not legal error in and of itself"); *Smith v. Comm'r of Soc. Sec.,* 2013 WL 1150133 at * 11 (N.D.Ohio March 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given great weight"); *Lambert—Newsome v. Astrue,* 2012 WL 2922717 at * 6 (S.D.Ill. July 17, 2012) (noting the fact that the ALJ gave great weight to an opinion "does not mean he was required to adopt it wholesale"); *Irvin v. Astrue,* 2012 WL 870845 at * 2–3 (C.D.Cal. March 14, 2012) (finding that although the ALJ gave great weight to a medical source opinion, he did not err in implicitly rejecting one limitation from that opinion).  *2014 WL 1654129* at *5.

ALJ's decision itself, there is nothing to show that the ALJ implicitly resolved conflicts between Ms. Belew's opinion and the RFC.  If the Court were to rely on information in the record that the ALJ does not discuss in her decision, i.e., the full opinions of Drs. Pickholtz, Das, and Bergsten, in order to explain the ALJ's decision to omit the limitation suggested by Ms. Belew, the Court would be engaging in the *post hoc* rationalization that case law prohibits.  *Moretti v. Colvin*, 4:13-CV-01344, 2014 WL 37750, *11 (N.D. Ohio Jan. 6, 20*14*) (citing *Berryhill v. Shalala,* 4 F.3d 993, *6 (6th Cir. Sept.16, 1993*) (unpublished *opinion* ) ("[A] simple but fundamental rule of administrative law ... is ... that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action.")).

The ALJ's failure to discuss the conflict between Ms. Belew's opinion and the RFC deprives this Court of the ability to conduct a meaningful review of this issue.  Accordingly, remand is appropriate.  On remand, the ALJ should either adopt the limitation assigned by Ms. Belew or explain her decision not to adopt the limitation.

## VII.  Conclusion and Recommendation

For the foregoing reasons, the Court should **REVERSE AND REMAND** the

Commissioner's decision for further proceedings consistent with this Report and

Recommendation.[11]

Dated:  June 10, 2014

_Kathleen B. Burke_
Kathleen B. Burke
United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[11] This recommendation should not be construed as a recommendation that Matejka be deemed disabled on remand.